Filed 7/2/26  Patterson v. Nuvision Credit Union CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

<table>
<tr><td>TRINA R. PATTERSON,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>NUVISION CREDIT UNION,<br><br>    Defendant and Respondent.</td><td>E085327<br><br>(Super.Ct.No. CVCO2403623)<br><br>OPINION</td></tr>
</table>

APPEAL from the Superior Court of Riverside County.  Daniel A. Ottolia, Judge.  Appeal dismissed.

Trina R. Patterson, in pro. per., for Plaintiff and Appellant.

Anaya Law Group, Anaya B. Anaya; Kaufman Dolowich, Mark K. Worthge, Edward C. Hsu, and Elizabeth M. Sanguinetti for Defendant and Respondent.

Trina Patterson, representing herself, appealed after the demurrer filed by Nuvision Federal Credit Union (Nuvision) was sustained without leave to amend.  We issued a tentative opinion indicating we were inclined to affirm the trial court's ruling.  In

1

that tentative opinion, we noted that Patterson's opening brief contained citations to cases that do not exist, citations to cases that do not stand for the proposition cited, and quotations that do not appear in the authorities cited. We noted that all of those citations bear the hallmarks of fabricated legal authority created by generative artificial intelligence (AI), commonly referred to as AI hallucinations. (*Schlichter v. Kennedy* (2025) 116 Cal.App.5th 24, 26 (*Schlichter*); *Noland v. Land of the Free, L.P.* (2025) 114 Cal.App.5th 426, 445 (*Noland*).) We cautioned that attorneys have been sanctioned for filing briefs containing AI hallucinated citations and that the same outcome was possible for pro se litigants. Patterson requested oral argument.

We subsequently issued an order to show cause why Patterson should not be sanctioned for "'relying on fabricated legal authority'" in the opening brief. (*Schlichter*, *supra*, 116 Cal.App.5th at p. 26.) After we issued the order to show cause, Patterson filed a request to dismiss the appeal, and we deferred ruling on the request.

At oral argument on the appeal, Patterson and counsel for Nuvision informed this court that the parties had settled the underlying action in its entirety and that the request for dismissal was based on the parties' settlement. We exercise our discretion to dismiss the appeal on the basis of the parties' settlement. (Cal. Rules of Court, rule 8.244(c)(2); unlabeled rule references are to these rules.)

We nevertheless issue this opinion for the purpose of providing context for the ruling on the order to show cause. We conclude that Patterson has failed to show cause why sanctions should not be imposed.

2

BACKGROUND

In June 2024, Patterson filed a pro se "verified petition for replevin, entry of default administrative judgment, damages, and injunctive relief" against Nuvision. (Capitalization omitted.)  The pleading was accompanied by 58 pages of exhibits.

Because this appeal follows the sustaining of a demurrer without leave to amend, we assume the truth of the material allegations in the operative pleading.  (*Roe v. Hesperia Unified School Dist.* (2022) 85 Cal.App.5th 13, 18.)

According to the petition and attachments, in August 2023 Patterson purchased a Chevrolet truck from Carson Chevrolet for $91,320.96.  Patterson financed the entire purchase and entered a 71-month retail installment sales contract (sales contract) with Carson Chevrolet, in which Patterson agreed to make monthly payments of $1665.40. Carson Chevrolet assigned its interest in the contract to Nuvision.  The sales contract provided that if Patterson defaulted, then the lender could repossess the vehicle.

In the sales contract, Patterson agreed:  "This contract contains the entire agreement between you and us relating to this contract.  Any change to the contract must be in writing and both you and we must sign it."

In January 2024, Nuvision sent Patterson a notice stating that a payment of $1,865.39 due in December 2023 was not received and was past due.  The same month, Patterson sent Nuvision a "non-negotiable notice of conditional acceptance," with the past due notice attached.  (Capitalization and boldface omitted.)  On top of the past due notice, Patterson wrote "'Acceptance' January 12, 2024," followed by her signature.  In

3

the "amount enclosed" portion of the payment coupon attached to the past due notice, Patterson wrote "92,500.00." Underneath that handwritten amount, she wrote: "'Accepted' January 12, 2024," followed by her signature.

Patterson gave Nuvision 10 days to respond to the notice. Patterson warned: "If you fail to provide a response within the stated timeline, it will be presumed that you have accepted the terms and conditions as stated herein," including "that no further payment is owed, that the outstanding debt has been discharged in full thereby reducing the account balance to zero, that you will remove negative credit reporting you have reported to the crediting agencies ...." Nuvision did not respond.

Over the next several months, Patterson sent Nuvision numerous additional notices. Those notices advised Nuvision that it was in default because it failed to respond to Patterson's previous notices, and the subsequent notices gave Nuvision an opportunity to cure that default. Nuvision did not respond to those notices. Patterson notified Nuvision that by failing to respond to the notice of acceptance, Nuvision had tacitly agreed to the terms of the notice, so Patterson "owe[d] nothing [to Nuvision], and this commercial matter is settled and closed."

In April 2024, Patterson filed a form entitled "UCC Financing Statement (UCC-1)" with the California Secretary of State. It identifies Nuvision as the debtor and Patterson as the secured party. In the form, Patterson asserted: "In Accordance to the Uniform Commercial Code, the Administrative Procedures Act (U.S.C. 5 Section 501, et seq. and the Federal Register Act, Debtor has tacitly agreed Secured Party owes Debtor

4

nothing on Public Account number …. Debtor owes Secured Party damages in the amount of $273,962.88."

In May 2024, Nuvision repossessed the Chevrolet truck from Patterson. Patterson filed her petition in the superior court the following month. The petition contains the following two causes of action: (1) replevin and (2) "judgment for satisfaction of lien, damages and injunctive relief." (Capitalization and boldface omitted.) For the replevin cause of action, Patterson alleged that Nuvision "took possession" of the truck, which she described as her personal property, and did not return it. For the second cause of action, Patterson petitioned the court "to render a judgment that directs [Nuvision] to release all claims on [her] Subject Personal Property and pay [Patterson] damages in the amount requested on the filed UCC.-1 Financing Statement plus an additional $5,000.00 per day from May 17, 2024 until [Patterson's] Subject Property is returned to her as per" the notice of acceptance. Patterson alleged that Nuvision had "lost their right to contest this Petition via estoppel through acquiescence" and had "abandoned their right to answer, oppose and appeal." She alleged that the matter had been resolved by the "private administrative process" that she initiated, which included all of the notices that she sent to Nuvision.

Patterson sought the following forms of relief: (1) an order stating that the loan was paid in full; (2) return of the Chevrolet truck to Patterson's possession or, if that was impossible, a $77,000 payment "for conversion" of that property; (3) removal of all "derogatory reporting with the credit bureaus"; (4) damages in the amount of

5

$273,962.88; and (5) an order prohibiting Nuvision from taking further action against Patterson, including selling the truck or attempting to collect on the debt.

Nuvision demurred on the grounds that the verified petition "is uncertain and does not state facts sufficient to constitute a cause of action with regard to all of the causes of action." Nuvision also argued that replevin, "judgment for satisfaction of lien," and injunctive relief are not cognizable claims. Patterson opposed the demurrer.

In August 2024, the trial court held a combined hearing on Patterson's request for entry of default judgment and on Nuvision's demurrer. No court reporter was present at the hearing. According to the minute order on the demurrer, the court had issued a tentative ruling, and neither party requested oral argument. The court adopted the tentative ruling as its final ruling and sustained the demurrer "without leave to amend (entire case)." The minute order provides: "There is no cause of action for replevin. Petitioner cannot unilaterally change the terms of the agreement without additional consideration and without a formal novation. The UCC sections cited by petitioner are unavailing as she is the account debtor and not the secured party."

DISCUSSION

I. *Appealability*

Patterson purports to appeal from a judgment of dismissal entered after the sustaining of a demurrer without leave to amend. The record does not contain such a judgment. Nor does it appear from the superior court's register of actions that judgment has been entered. An order sustaining a demurrer without leave to amend is not

6

appealable.  (*Flores v. Department of Corrections & Rehabilitation* (2014) 224 Cal.App.4th 199, 203.)  Instead, "'a formal judgment must be entered against the unsuccessful party from which the appeal can be taken.'"  (*Id.* at pp. 203-204.)  We infer from the minute order's dismissal of the "entire case" "that the court deemed the matter fully disposed of," and so in the interest of judicial economy we do not dismiss the appeal.  (*Id.* at p. 204.)  We direct the superior court "to enter a judgment of dismissal nunc pro tunc as of the date of the order sustaining the demurrer without leave to amend, and we will construe the [amended] notice of appeal to refer to that judgment."  (*Ibid.*; see also *Meinhardt v. City of Sunnyvale* (2024) 16 Cal.5th 643, 658 & fn. 9.)

II.      *Governing principles of appellate law*

We presume that an appealed judgment is correct.  (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609; *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)  The appellant bears the burden of affirmatively demonstrating error and providing an adequate record on appeal.  (*Jameson*, at p. 609.)  To carry that burden, the appellant must provide "the reviewing court with some cogent argument supported by legal analysis and citation to the record."  (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 286-287; Cal. Rules of Court, rule 8.204(a)(1)(B) & (C).)  The appellant cannot carry that burden by citing broad ranges of pages in the record, rather than the specific pages on which particular facts can be found, because we are "unable to adequately evaluate *which facts* the parties believe support their position when nothing more than a block page reference is offered in the briefs."  (*Bernard v. Hartford Fire Ins. Co.* (1991) 226 Cal.App.3d 1203,

7

1205; *Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856.) All of those principles apply to self-represented litigants. (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246; *First American Title Co. v. Mirzaian* (2003) 108 Cal.App.4th 956, 958, fn. 1.)

III. *Failure to state a claim*

Before settling this litigation, Patterson argued that the trial court erred by sustaining Nuvision's demurrer. Those arguments lack merit.

We independently review a trial court's ruling sustaining a demurrer without leave to amend. (*Bartholomew v. Parking Concepts, Inc.* (2026) 118 Cal.App.5th 438, 556 (*Bartholomew*).) We accept the truth of properly pleaded material facts and consider any matters that may be judicially noticed. (*Consumer Cause, Inc. v. Arkopharma, Inc.* (2003) 106 Cal.App.4th 824, 827; *Los Angeles Waterkeeper v. State Water Resources Control Bd.* (2023) 92 Cal.App.5th 230, 264.) We determine whether the facts are sufficient as a matter of law "to state a cause of action under any legal theory." (*T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 162.)

"In order to prevail on appeal from an order sustaining a demurrer, the appellant must affirmatively demonstrate error. Specifically, the appellant must show that the facts pleaded are sufficient to establish every element of a cause of action and overcome all legal grounds on which the trial court sustained the demurrer." (*Scott v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 743, 752 (*Scott*); *Bartholomew*, *supra*,

118 Cal.App.5th at p. 556.)  "We will affirm the ruling if there is any ground on which the demurrer could have been properly sustained."  (*Scott*, at p. 752.)

Patterson's opening brief did not cite any specific factual allegations in her pleading.  The only citations to the clerk's transcript are in the introduction and the statement of the case.  The only citations to the pleading are the following two citations in the statement of the case:  One citation is to the entire 78-page petition, including exhibits, and the other is to the 48 pages of exhibits.  None of the citations in the introduction is to the pleading.  The brief never cites any specific factual allegations that could state a claim under any legal theory.  We will not develop Patterson's arguments for her.  (*Pacific Bell Telephone Co. v. County of Placer* (2025) 111 Cal.App.5th 634, 640 (*Pacific Bell*).)

As for Patterson's putative cause of action for "judgment for satisfaction of lien, damages and injunctive relief," Patterson has not carried her burden of identifying the elements of the claim or showing that she alleged sufficient facts to establish them. (*Scott*, *supra*, 214 Cal.App.4th at p. 252.)  Nuvision argued in its demurrer that a cause of action for "'judgment for satisfaction of lien'" does not exist and that "'[i]njunctive relief is a remedy, not a cause of action.'"  (Italics omitted.)  In her opening brief, Patterson has not provided any legal authority for the proposition that a cause of action for "judgment for satisfaction of lien" exists.  We are aware of none.  Even if we were to assume for the sake of argument that such a cause of action does exist, Patterson has not identified its elements and has not shown that her pleading alleged sufficient facts as to each element.

9

(*Ibid.*) And "[a] cause of action must exist before a court may grant a request for injunctive relief." (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 65.) "Injunctive relief is a remedy, not a cause of action." (*Ibid.*)

Regarding the replevin cause of action, Patterson presents the following argument that she stated a valid cause of action: "California *Code of Civil Procedure § 512.010* authorizes recovery of personal property where a petitioner shows a superior interest and wrongful detention. Appellant submitted a verified petition, perfected *UCC* lien, unrebutted affidavits, and documentary evidence of default. [Nuvision] failed to provide any rebuttal or legal justification for repossession." The argument lacks merit. Patterson does not identify the elements of a claim under Code of Civil Procedure section 512.010 and does not identify the factual allegations in her pleading that correspond to those elements. (*Scott*, *supra*, 214 Cal.App.4th at p. 752.) Again, we will not develop Patterson's argument for her. (*Pacific Bell*, *supra*, 111 Cal.App.5th at p. 640.)

Finally, Patterson also asserted in her opening brief that she sufficiently pled a claim for declaratory relief. (Code Civ. Proc., § 1060.) Patterson's entire argument on the point reads as follows: "Additionally, *Civil Code § 1060* [*sic*] allows a party to seek declaratory relief to determine rights and duties under law. Appellant sufficiently stated in her Petition facts establishing a real and substantial controversy. Her claims were not only adequately pleaded—they were proven by unrebutted evidence. The trial court's denial constituted legal error." The argument fails. Patterson does not identify the elements of a claim for declaratory relief under Code of Civil Procedure section 1060 and

10

does not identify the factual allegations in her pleading that correspond to those elements. (*Scott*, *supra*, 214 Cal.App.4th at p. 752.) Again, we will not develop Patterson's argument for her. (*Pacific Bell*, *supra*, 111 Cal.App.5th at p. 640.)

IV. *Remaining arguments*

Patterson made numerous additional arguments challenging the trial court's ruling. None is meritorious.

First, many of the arguments Patterson makes are not supported by citation to any legal authority or supported by any legal analysis. For example, Patterson contends that the demurrer was procedurally and substantively improper because she filed a petition and not a complaint. Patterson's explanation of the allegedly material differences between the two types of pleadings is not supported by citation to legal authority or legal analysis. Arguments that are not supported by citation to legal authority and analysis are forfeited. (*Tellez v. Rich Voss Trucking, Inc.* (2015) 240 Cal.App.4th 1052, 1066 (*Tellez*).) Again, we will not develop an appellant's arguments for them. (*Pacific Bell*, *supra*, 111 Cal.App.5th at p. 640.)

Second, Patterson's opening brief contains citations to cases that do not exist, citations to cases that do not stand for the proposition cited, and quotations that do not appear in the authorities cited. For example, Patterson erroneously cites *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 518 for the proposition that both the Uniform Commercial Code and the California Uniform Commercial Code are binding statutory authority, so "[o]nce invoked, courts are obligated to enforce their provisions."

11

(Emphasis omitted.)  *Romero* is a criminal case that has nothing to do with either the Uniform Commercial Code or the California Uniform Commercial Code.  (*Ibid.*)  In addition, Patterson cited numerous cases that do not exist, including:  *Hagood v. Sony Corp. of America* (7th Cir. 1988) 846 F.2d 1145; *Dantzler Lumber & Export Co. v. Columbia Forest Products, Inc.* (5th Cir. 2004) 116 Fed.App'x 632; *West Covina Healthcare v. Superior Court* (2007) 153 Cal.App.4th 1241; *Rappaport v. Gelfand* (1961) 197 Cal.App.2d 611.)  Finally, by way of example, Patterson erroneously cites *United States v. Tweel* (5th Cir. 1977) 550 F.2d 297, 299 as the source of the following quotation:  "'Where a party is legally bound to speak and remains silent, such silence is deemed as acquiescence.'"  *Tweel* does not contain that quotation.  Nonexistent cases and nonexistent quotations do not support the propositions and arguments for which they are cited (*Noland*, *supra*, 114 Cal.App.5th at p. 447), so we consider those arguments forfeited too (*Tellez*, *supra*, 240 Cal.App.4th at p. 1066).

Third, Patterson contends that the trial court erred by failing to grant summary judgment in her favor, because the facts were undisputed.  Patterson did not move for summary judgment, so the argument fails.

V.     *Order to show cause*

We issued an order to show cause why Patterson should not be sanctioned for relying on fabricated legal authority in her opening brief.  We conclude that Patterson has failed to show cause why she should not be sanctioned.  We accordingly impose sanctions in the amount of $500, but we suspend execution of the sanction.

12

A.    *Legal framework*

Self-represented litigants are held to the same standards as attorneys.  (*Sheerer v. Panas* (2026) 119 Cal.App.5th 367, 370 (*Sheerer*); *Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984-985.)  As such, Patterson was "obligated to comply with the California Rules of Court" in filing her opening brief.  (*Schlichter*, *supra*, 116 Cal.App.5th at p. 31.)

"Rule 8.204(a)(1)(B) provides that each point in every brief must be supported 'by argument and, if possible, by citation of authority.'"  (*Schlichter*, *supra*, 116 Cal.App.5th at p. 31.)  We are authorized to impose sanctions on a self-represented litigant for committing any "unreasonable violation" of the rules.  (Rule 8.276(a)(4); *Sheerer*, *supra*, 119 Cal.App.5th at p. 371; *Schlichter*, at p. 31; *Noland*, *supra*, 114 Cal.App.5th at pp. 442-443 [compiling case authority for sanctions imposed by appellate courts for rule violations].)  Citation to fabricated legal authority constitutes an unreasonable violation of the rules of court.  (*Noland*, at p. 447; *Schlichter*, at p. 33.)

Like attorneys, pro se litigants are free to use generative AI to assist in drafting briefs but must check every citation to ensure that the cited authority exists, that it supports the proposition for which it is cited, and that quotations are accurate.  (*Sheerer*, *supra*, 119 Cal.App.5th at p. 371; *Schlichter*, *supra*, 116 Cal.App.5th at p. 33; *People v. Alvarez* (2025) 114 Cal.App.5th 1115, 1119 (*Alvarez*).)  The use of nonexistent authorities and quotations in court filings is improper regardless of the source.

Attorneys who have filed briefs containing citations to fabricated legal authority have been sanctioned.  (*Schlichter*, *supra*, 116 Cal.App.5th at p. 33; *Alvarez*, *supra*, 114

13

Cal.App.5th at p. 1120; *Noland*, *supra*, 114 Cal.App.5th at p. 449; *Shayan v. Shakib* (2025) 116 Cal.App.5th 619, 624-626.)  Pro se litigants have been warned of the same possible outcome.  (*Sheerer*, *supra*, 119 Cal.App.5th at p. 371.)

B.      *Relevant proceedings*

On January 2, 2025, Patterson filed the notice of appeal in this case.  On the same day, she filed a notice of appeal in another case, *Patterson v. Digital Federal Credit Union* (June 23, 2026, E085332) [nonpub. opn.] (*Patterson v. Digital Federal*).  She represented herself in both cases.  The opening brief in this case was filed on May 20, 2025, and she filed the opening brief in *Patterson v. Digital Federal* on June 30, 2025. The underlying pleadings in both cases are very similar and involve similar fact patterns: Patterson defaulted on loans and thereafter claimed that (1) the loans were satisfied even though she had not paid the outstanding balances and (2) the creditors owed her money. (Compare, *ante*, section I. with *Patterson v. Digital Federal*.)  The opening briefs in both cases are likewise very similar, and some argument sections are identical.

We issued the tentative opinion in *Patterson v. Digital Federal* on March 19, 2026.  The tentative opinion explained that we were inclined to affirm the judgment.  It also noted that "Patterson's opening brief contains citations to cases that do not exist, citations to cases that do not stand for the proposition cited, and quotations that do not appear in the authorities cited."  We also noted that Patterson's "citations to nonexistent or inapposite cases and her use of nonexistent quotations bear the hallmarks of fabricated legal authority created by generative artificial intelligence (AI), commonly referred to as

14

AI hallucinations."  We warned that "like attorneys, pro se litigants must check and verify every citation to ensure that the cited case exists and that any proposition cited or quoted material is accurate" and that failure to do so has resulted in attorneys being sanctioned and could result in the brief being stricken or the appeal being dismissed.  We gave the parties 12 days to request oral argument.  Patterson requested oral argument on March 30, 2026.  Oral argument was scheduled for June 2, 2026.

On April 21, 2026, we provided the parties with the tentative opinion in this case, explaining that we were inclined to affirm the judgment in this case too.  Sections I through IV in this opinion are substantively unchanged from the tentative opinion.  As in the tentative opinion in *Patterson v. Digital Federal*, we noted that the opening brief contained citations to cases that do not exist, citations to cases that do not stand for the propositions for which they are cited, and quotations that do not appear in the authorities cited, and the brief thus bears the hallmarks of generative AI.  We again warned that courts have sanctioned attorneys for similar citation errors, and we noted that *Sheerer* had recently warned that the same outcome was possible for self-represented litigants.  We gave the parties 12 days to request oral argument.  Patterson requested oral argument on May 4, 2026.  Oral argument was set on the same day as argument in *Patterson v. Digital Federal*, on June 2, 2026.

On the same day that Patterson requested oral argument, we issued the order to show cause why sanctions should not be imposed for her reliance on fabricated legal authority.  Among other authorities, we cited rule 8.204(a)(1)(B).  We stated that we were

15

considering imposing sanctions because the opening brief contained (1) citations to seven cases that appear not to exist and (2) four quotations attributed to existing cases that do not appear in those cases. We listed all of those nonexistent cases and quotations.[1]

The order to show cause noted that the citations to the seven nonexistent cases and four nonexistent quotations might have been fabricated by generative AI. But the order further stated that "regardless of the source, the use of such nonexistent authorities and quotations in court filings is improper. Self-represented litigants are held to the same standards as attorneys and must verify every citation and quotation filed in a brief in this court." We gave Patterson 10 days to file a written response to the order, and we ordered Patterson to appear in-person for a hearing on the same day as oral argument in both of her appeals.

---

[1] In the order to show cause, we stated that in the opening brief Patterson cited the following cases that appear not to exist: (1) *Hagood v. Sony Corp. of America* (7th Cir. 1988) 846 F.2d 1145; (2) *Dantzler Lumber & Export Co. v. Columbia Forest Products, Inc.* (5th Cir. 2004) 116 F.App'x. 632; (3) *In re White* (Bankr. D. Mass. 2002) 287 B.R. 577; (4) In re Prevo's Market, Inc. (Bankr. W.D. Mich. 1990) 12 UCC Rep. Serv. 2d 1177; (5) *In re Clark* (Bankr. N.D. Iowa 2001) 2001 WL 1806036; (6) *West Covina Healthcare v. Superior Court* (2007) 153 Cal.App.4th 1241; and (7) *Rappaport v. Gelfand* (1961) 197 Cal.App.2d 611. We further stated that in the opening brief Patterson attributed to existing cases the following quotations that do not appear in those cases: (1) "The court's authority is confined to the limits established by statute" (*People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 518); (2) "Where a party is legally bound to speak and remains silent, such silence is deemed as acquiescence" (*U.S. v. Tweel* (1977) 550 F.2d 297, 299); (3) "Where a party has, with knowledge of the facts, acquiesced in a transaction or has remained silent when he ought to have spoken, equity will estop him from later asserting a claim" (*Strong v. County of Santa Cruz* (1975) 15 Cal.3d 720, 725); and (4) "[A] party who fails to timely raise an objection or file an answer is barred from opposing entry of judgment" (*Lake v Reed* (1997) 16 Cal.4th 448, 464).

Patterson did not file a timely written response to the order to show cause. After the deadline passed, she filed a request to dismiss the appeal. The form on which she submitted the request did not include any reason for the dismissal request. We reserved ruling on the request.

Several days before the scheduled hearing on the order to show cause, Patterson filed a motion for leave to file a late written response. The motion contained citations to three cases, two of which do not stand for the propositions for which they were cited: *Lavine v. Hospital of the Good Samaritan* (1985) 169 Cal.App.3d 1019 and *In re S.C.* (2006) 138 Cal.App.4th 396. Patterson cited *Lavine* twice for propositions concerning relief from default under Code of Civil Procedure section 473, subdivision (b), and that mistake, inadvertence, or excusable neglect constitute "'[g]ood cause.'" *Lavine* does not involve or mention that statutory provision, and "good cause," mistake, inexcusable neglect, and inadvertence are not otherwise discussed or mentioned in the opinion. (*Lavine*, at pp. 1021-1030.) Patterson cited *S.C.* for the proposition that the "court has inherent authority to permit correction of errors and relieve from procedural defaults." Neither the cited page nor any other page in *S.C.* supports that proposition. The case says nothing about inherent authority or procedural defaults.

In a declaration in support of her motion for leave to file a late response, Patterson asserted that she did not file a timely response to the order to show cause because she "entered into a stipulation with [Nuvision] to dismiss the underlying appeal" before the 10-day deadline to file an opposition. Patterson mistakenly believed that the settlement

17

discharged the order to show cause, so she did not need to respond. We granted Patterson's request to file the late response.

In her written response to the order to show cause, Patterson stated that when she prepared her opening brief she was experiencing significant and traumatic personal issues that caused her "to rely on outside assistance for legal research." Patterson "failed to check [e]very case citation before filing the brief." She admitted that not checking those citations was a mistake, and she apologized to the court for not verifying the citations.

Patterson also stated: "For over 16 years, Appellant has assisted in preparing appellate briefs as a self-represented litigant and for other self-represented litigants without any prior citation errors or sanctions. Appellant successfully assisted in the preparation of the Appellants' Briefs in the case of *Best v. Ocwen Loan Servicing LLC* (2021) 64 Cal.App.5th 568—a published decision from this district (Fourth District, Division Two). That case remains good law. This is the first problem Appellant has ever had in over 16 years of pro per appellate practice."

Patterson asked us to discharge the order to show cause without imposing sanctions. She asserted that monetary sanctions are unnecessary because issuance of the order to show cause requiring her to appear in-person "has already served any deterrent purpose."

Patterson appeared remotely for oral argument on June 2, 2026, for both this case and *Patterson v. Digital Federal*. The hearing on the order to show cause was continued for approximately two weeks so that Patterson could appear in person.

18

At the hearing on the order to show cause, Patterson told the court that an unidentified person who is not currently an attorney helped her prepare the opening brief. (3:39-3:47; 4:14-4:17; 4:19-4:22; 4:30-4:49; 4:56-5:03) That person did their own research and prepared portions of the opening brief, including those portions that contained the nonexistent cases, and they may have relied on generative AI. (4:40-4:49; 4:56-5:03) Patterson did not "fact check" any of the cases given to her by the other person and was not aware when she filed the opening brief that "ghost caselaw was even a thing." (3:47-4:12; 5:04-5:08)

Aside from relying on the unnamed "outside source," Patterson also did her own legal research for the brief, used an unspecified form of AI in drafting the brief, and assembled the entire brief. She admitted that she failed to "fact check" those cases too. (13:34-14:00; 14:43-14:46; 14:57-15:20; 16:59-17:07) She otherwise stated: "I did not check those cases. Those seven cases. I did not check those." (15:14-15:19) Asked whether the mistakes in the brief were caused by her use of generative AI or the unidentified person who helped her prepare the brief, Patterson answered that it "could have been a combination of both." (14:48-14:56)

The court asked Patterson whether she had checked the other cases in the brief, and she said that she recognized other cases cited in the brief from other research that she had conducted. (15:20-15:29) The court explained to Patterson that it could not find a single case cited that actually stands for the proposition for which it was cited, and she responded that she knows that "there are cases that support what I was presenting or I

19

should say the administrative process." (15:38-16:45) She claimed to know about those cases from other research that she had conducted, and she did not explain why that case law was not included in the brief. (16:49-16:59)

Patterson admitted that it was a mistake not to verify the cases cited in the brief before she filed it. (17:34-17:49) She did not intend to submit a brief "that did not contain actual cases." (20:45-20:45)

We also questioned Patterson about the opening brief in *Patterson v. Digital Federal*. (10:07-11:47) We pointed out that the opening brief in that case was very similar to the one filed in this case and that the tentative opinions in both cases and the order to show cause gave her notice of the court's concerns about fabricated legal authority. (10:07-11:47) We asked Patterson why she had done nothing to address the court's concerns about fabricated legal authority in *Patterson v. Digital Federal* by, for example, filing a motion to withdraw or correct the opening brief. (10:07-11:47) Patterson explained that the opening briefs in the cases were prepared within several weeks of each other. (11:54-12:00) Patterson said that she read the portion of the tentative opinion in *Patterson v. Digital Federal* that expressed our concerns about fabricated legal authority, but she did not take any corrective action because the court did not issue an order to show cause in that case. (12:01-13:19) Patterson said that the discussion in the tentative opinion in *Patterson v. Digital Federal* about her reliance on fabricated legal authority "didn't faze [her] one way or another" because we did not issue an order to show cause. (13:09-13-19)

20

Patterson stated that the opening briefs in this case and *Patterson v. Digital Federal* were the first time that she failed to check the cases cited in a brief in her "previous 15 years of writing briefs." (14:24-14:43; 15:29-15:37; 17:07-17:24) The court questioned Patterson about the representations in her written response that she has prepared appellate briefs for other self-represented litigants for 16 years, including the briefs filed by the appellants (Charles W. Best, Jr. and Robbie Johnson Best (collectively, the Bests)) in *Best v. Ocwen Loan Servicing, LLC* (2021) 64 Cal.App.5th 568 (*Best*). (5:47-6:17) Patterson explained: She prepared the briefs for the Bests, who were appearing before this court pro se. Patterson prepared the briefs with the assistance of and "under the watchful eye" of an attorney named Jamie Wright of the Law Offices of Jamie Wright. (6:18-6:31; 6:34-6:36; 6:40-6:53; 7:20-7:45; 8:00-8:12; 8:25-8:34) Patterson did not work for Wright but rather "worked with" Wright. (7:20-7:40)

Patterson has done similar work with Wright in preparing appellate briefs for other self-represented litigants. (8:37-9:39) Patterson believes that "a pro per person has the right to hire or get their briefs prepared by someone else other than them with their assistance or I should say with me assisting them." (9:22-9:37) Patterson "mostly" "work[s] by [her]self" but sometimes consults with attorneys. (18:18-18:21) When asked whether she plans to prepare briefs for self-represented litigants in the future, Patterson said "[n]ot really," because she is in the process of "kind of" "weaning [herself] out of that." (18:33-18:57}

21

Patterson told the court that the order to show cause had taught her a "very valuable lesson." (19:50-20:05) In future filings, whether prepared for herself or for another self-represented litigant, she will check the cases cited to ensure that they exist and stand for the propositions for which they are cited. (5:16-5:40; 20:07-20:29; 21:45-21:15) She does not plan or intend to prepare anything that contains "ghost case law" and will "not make up stuff." (5:30-5:40; 20:14-20:29) She promised that submitting briefs with cases that do not exist "will definitely not happen again." (20:40-20:59)

C. *Analysis*

1. *Sanctions*

In response to the order to show cause, Patterson has taken some positive steps. She has admitted that the opening brief contained citations to seven nonexistent cases, and she has admitted that it was a mistake not to check those citations before she filed the brief. She also apologized to the court for that mistake.

We nevertheless find that Patterson has failed to show cause why we should not sanction her for relying on fabricated legal authority in the opening brief. One of the bases for the order to show cause was that her brief contained four fabricated quotations, which she attributed to real cases. But Patterson did not acknowledge those fabricated quotations at all. Nor did she answer the court's question about whether she had checked *any* of the cases in the brief before filing it. She instead only narrowly admitted that she did not check the citations to the seven nonexistent cases. Patterson consequently has not

22

shown cause why she should not be sanctioned for including the fabricated quotations in her opening brief.

We also do not find credible Patterson's claim that she has learned her lesson from the mere issuance of the order to show cause. Patterson asserted that in the future she will verify that every case cited is a real case and stands for the proposition for which it is cited. That assertion is undermined by Patterson's conduct since we issued the order to show cause.

In the motion for leave to file a late response to the order to show cause, Patterson cited three cases, two of which have nothing to do with the propositions for which they were cited. These are not close calls; the cases are not arguably supportive of the propositions for which they were cited. We infer that even in her motion for leave to file a late response to the order to show cause, Patterson did not properly check the cases that she cited. The order to show cause thus has not changed Patterson's behavior in the way that she claims it did.

Moreover, Patterson cannot claim that she was unaware of the issue when she filed the motion. Our tentative opinions in both cases warned Patterson about citing cases that do not support the propositions for which they are cited. Despite those warnings, Patterson filed a motion in which two-thirds of the cases have nothing to do with the propositions for which they are cited. For all of these reasons, we do not find credible Patterson's claim that she has already learned her lesson from the mere issuance of the order to show cause.

23

Similarly, Patterson's conduct after she received the tentative opinion in *Patterson v. Digital Federal*, the tentative opinion in this case, and the order to show cause also tends to undermine her claim that issuance of the order to show cause by itself had a sufficient deterrent effect.  After issuance of the order to show cause in this case, Patterson did not take any steps to try to remedy or cure the problems with her brief in *Patterson v. Digital Federal*.  But the opening briefs in both appeals are nearly identical, and we noted in both tentative opinions that the opening briefs were replete with fabricated legal authority.

For all of the foregoing reasons, we find that Patterson has failed to show cause why she should not be sanctioned for relying on fabricated legal authority in her opening brief.  Patterson "unreasonably violated rule 8.204(a)(1)(B) 'by not support[ing] each point with citations to real (as opposed to fabricated) legal authority.'"  (*Schlichter*, *supra*, 116 Cal.App.5th at p. 33; rule 8.276(a)(4).)  We impose but suspend sanctions in the amount of $500.

### 2. *Referral to the State Bar*

Section 6125 of the Business and Professions Code provides:  "No person shall practice law in California unless the person is an active licensee of the State Bar."

Patterson is not an attorney.  In responding to the order to show cause, Patterson represented to this court both in writing and orally that she has prepared appellate briefs for other self-represented litigants, including the appellants in *Best*.  During the hearing, Patterson said that she believes that self-represented litigants have the right to hire her to

24

prepare their briefs. It is possible that Patterson's practice of preparing appellate briefs for self-represented litigants constitutes practicing law without a license. (Bus. & Prof. Code, § 6125; *Estate of Kempton* (2023) 91 Cal.App.5th 189, 193, fn. 2.) We accordingly refer the matter to the State Bar to conduct any investigation it deems appropriate.

## DISPOSITION

The trial court is directed to enter a judgment of dismissal nunc pro tunc as of the date of the order sustaining the demurrer without leave to amend. The appeal is dismissed pursuant to the parties' settlement. (Rule 8.244(c)(2).) The parties shall bear their own costs of appeal. (Rule 8.278(a)(5).)

For Patterson's unreasonable violation of rule 8.204(a)(1)(B), we sanction Patterson in the amount of $500. Execution of the sanction is suspended.

We direct the clerk of this court to forward a copy of this opinion to the State Bar to conduct any investigation it deems appropriate concerning the possible unauthorized practice of law by Patterson.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ _____
J.

We concur:


FIELDS _____
     Acting P. J.

RAPHAEL _____
     J.

25